Helen A. LITTLE, Plaintiff,

v.

Joseph A. CALIFANO, Jr., Secretary of Health, Education and Welfare, Defendant.

No. C–C–77–267.

United States District Court,
W. D. North Carolina,
Charlotte Division.

Oct. 13, 1978. Order Dec. 29, 1978.

Harry B. Crow, Jr., Monroe, N.C., for plaintiff.

Wayne C. Alexander, Asst. U.S. Atty., Charlotte, N.C., for defendant.

## ORDER GRANTING BENEFITS

McMILLAN, District Judge.

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g) seeking review of a decision of the Secretary of Health, Education and Welfare denying her application for disability insurance benefits under the Social Security Act, 42 U.S.C. §§ 416(i) and 423(a).

Plaintiff filed her application on May 26, 1976, and her application was denied. On February 23, 1977, she made a timely request for a hearing to review the decision. The hearing was held before an Administrative Law Judge on April 7, 1977. Mrs. Little was not represented at the hearing. The only oral testimony was from Mrs. Little and Mrs. Little's daughter, Mrs. Brenda L. Brooks. No vocational evidence, other than that found in Mrs. Little's testimony and applications for benefits, was introduced either orally or by documentary exhibits. Records of medical examinations and reports were introduced at the hearing and considered. Based on this evidence the Administrative Law Judge concluded that Mrs. Little was not entitled to receive disability benefits. At the request of Mrs. Little, the Appeals Council reviewed this decision, and by letter dated July 15, 1977, it affirmed the decision of the Administrative Law Judge.

This action was commenced on September 19, 1977. Both parties have moved for summary judgment; there are no genuine issues of material fact and the case is ready for decision. For the following reasons I conclude that the decision of the Secretary is not supported by substantial evidence in the record and that plaintiff is entitled to receive the benefits for which she applied.

Plaintiff's earnings record shows that the special earnings requirement of the statute was met from the time she claims she first became unable to work in 1976 and will continue to be met through June 30, 1980.

The evidence before the Administrative Law Judge showed that plaintiff was a fifty-seven-year-old woman with a high school education who has no apparent vocational training except that received on the job. Mrs. Little worked as a seamstress in a shirt factory from January 1967 to June 1969 and again from July 1973 to May 7, 1976, the claimed date of onset of her disability. Her work required that she handle and move bundles of shirts weighing as much as thirty pounds for distances as far as fifteen feet. Record at 35, 52–3. In the interim period, July 1969 to June 1973, Mrs. Little worked in a woodworking firm doing decoupage. Record at 27, 52. Mrs. Little has no other employment history other than many years of work on a family farm operated by her and her husband. Record at 52.

Plaintiff left her job at the woodworking firm, claiming that the paint and glue with which she was required to work were aggravating her nerves and causing or aggravating dizzy spells. Record at 26–7. She left her position as a seamstress in May 1976, claiming that she had become unable to work as a result of inner ear trouble, high blood pressure, headaches, facial spasms, arthritis and dizziness. Record at 34. She is not now employed.

Mrs. Little testified that her principal problems resulted from an inability to perform any function requiring either substantial motion (Record at 24) or prolonged periods of sitting (Record at 29). She testified that she is unable to do much of the daily housework as she cannot stoop down without losing her balance. Chores such as vacuuming are beyond her ability because they involve too much motion and physical exertion. Record at 24. Plaintiff testified that the frequent dizzy spells often prevented her from driving, even though she did have a valid driver's license. Record at 24. She claimed that her arthritic condition affected both her back and her hands, the latter

becoming very painful when used actively. Record at 28. Mrs. Little also testified to a history of involuntary facial spasms. Record at 29–30. No substantial testimony was taken about the side effects of these spasms, but the record contained the report of Dr. F. A. Stewart, a family practitioner, who, during his first encounter with Mrs. Little on November 11, 1976, observed one period of spasms. He noted in his report that as a result of the spasm, "She was slightly confused, but could communicate." Record at 77. Dr. Stewart reported that the spasm he observed lasted approximately twenty to thirty minutes. Record at 73.

Mrs. Little also testified that she takes daily medication, including hormones, for blood pressure, circulation and arthritis. Mrs. Little apparently has been unable to take any medication other than aspirin for her arthritis because of problems with side effects. Record at 25–26.

Mrs. Little's testimony was in large measure corroborated by her daughter, Mrs. Brooks. She testified that she saw Mrs. Little every day. Record at 31. Mrs. Brooks noted that her mother's dizzy spells prevented her from doing physically taxing labors at any time and from doing general housework much of the time. She stated in addition that Mrs. Little was forced to give up her gardening activities for the first time in 1976. Record at 31. The Administrative Law Judge made no finding or suggestion questioning the credibility of either Mrs. Little or Mrs. Brooks.

The medical evidence before the Secretary, either at the hearing or Appeals Council stage, consisted of the reports of three doctors, two of whom, Dr. F. A. Stewart and Dr. Richard Felkner, had observed and treated Mrs. Little on isolated occasions. The third, Dr. William Deskins, reported that he and his associates had treated Mrs. Little from August, 1969, through May 7, 1976, the date of the claimed onset of disability. Record at 79–80.

Dr. Deskins briefly summarized Mrs. Little's medical history in a letter to the North Carolina Department of Human Resources, which was made a part of the record before the Secretary at the Appeals Council level:

". . . She was hospitalized by my associate, Dr. A. P. Kitchin in September of 1970 and then by Dr. W. M. Nesbit, a neurologist, in Charlotte in December of 1970. The reason for these hospitalizations and evaluations was the development of the following symptoms: persistent weakness, easy fatigability, frequent intermittent episodes of blanching and associated numbness and paresthesias of both hands and occasionally of one or both feet. Then on September 23, 1970 she had her first episode of drawing of the face with face tending to pull to the left but with both sides of the face being involved with involuntary muscle spasms. These episodes occurred at irregular intervals lasting from seconds to minutes and were associated with a generalized weak feeling, [mal]aise and poor ability to control her hands but no impaired consciousness X-rays were normal as was a right carotid arteriorgram. She was initially placed on Dilantin, but after approximately one month developed an allergic rash to this and it had to be discontinued. While on Dilantin she had no difficulty; however, following discontinuation of the Dilantin the difficulty recurred. In addition to the above spinal fluid examination was normal, also brain scan and EEG were normal. Discharge diagnosis was left hemifacial spasm of undetermined etiology. Because of persistence of these symptoms as well as development of vertigo, she was referred to Duke Medical Center in March, 1971. By this time she had developed frequent severe throbbing frontal headaches, occasionally severe enough to cause nausea without vomiting. Occasionally with headaches she noted blurred vision. The final diagnosis was listed by Duke Medical Center as facial spasms, etiology undetermined; history of Dilantin allergies; status posthysterectomy. She was placed on Valium but showed little improvement. Subsequently because of depressive reaction she was placed on Pertofrone but was unable to take this. She

was subsequently seen by Dr. Kitchin in July of 1971 with generalized joint pain and tenderness and stiffness and was placed on Aspirin with a tenative diagnosis of osteoarthritis. Since that time the patient has continued to have fairly frequent episodes of symptoms described above including headaches and drawing of the face. She also has continued to display joint difficulty with pain, tenderness and stiffness. She also has had labile hypertension but this has been fairly well controlled with Chlorothiazide. Because of persistance of symptoms she was referred to the Durwood Clinic in Charlotte in April, 1973. Their diagnosis was migraine variant suspected; labile hypertension; osteoarthritis to the thoracic spine. She was placed on Sansert 1 tablet t. i. d.

"She was seen on several occasions in 1973, 1974 and 1975 with coccydynia which was treated by injection and symptomatic treatment. The vertigo which she had had to some extent became much more severe and in mid 1976 she was referred to Dr. Richard Felkner, otolaryngologist, in Charlotte. She was placed on Antivert by Dr. Felkner.

.     .     .     .     .

"In summary, Mrs. Little's problems include mild labile hypertension, migraine headaches; osteoarthritis, particularly of the spine; acute and chronic anxiety; depression; vertigo, suspected postural; facial spasms of undetermined etiology and menopausal syndorme. *In view of this lady's multiple problems and based on my observation of her over this period of years, I feel that she is totally and permanently disabled.*"
Record at 79–80 (emphasis added).

As Dr. Deskins' letter indicates, Dr. Felkner also diagnosed Mrs. Little's balance and motion problems as postural vertigo, for which Dr. Felkner began treatment with the medication Antivert. However, Dr. Deskins reported to the Secretary in a report filed before the hearing in front of the Administrative Law Judge that *"Antivert has not seemed to help"* (emphasis added).

Record at 69. Dr. Deskins has also noted that Mrs. Little would be functionally restricted in heavy lifting or long walking due to her arthritis. Record at 70.

■ In spite of this uncontradicted medical and testimonial evidence that Mrs. Little suffered from a form of vertigo for which no compatible treatment had been found, and which had become increasingly debilitating, particularly in 1976 (Record at 31, 80), the Administrative Law Judge, apparently *sua sponte*, decided that plaintiff's vertigo malady "is caused by posture and can be readily eliminated by change of posture." Record at 11. Assuming *arguendo* that the Administrative Law Judge has properly noted a possible course of treatment, plaintiff's condition may nevertheless not be so readily dismissed as "remediable" as the Secretary would suggest. The Secretary argues in his memorandum that under Health, Education and Welfare regulations, a malady that is subject to treatment cannot form the basis of a finding of disability. *See* 20 C.F.R. § 404.1507 (1977). Since plaintiff's vertigo is so amenable, he reasons, it therefore cannot support a finding of disability. This argument, however, fails to reflect either the exact wording of the regulation or the limited burden of proof placed on the disability claimant. The regulation at issue reads in pertinent part:

"For purposes of entitlement to a period of disability or to disability insurance benefits or to child's, widow's or widower's insurance benefits based on disability, an individual's impairment must also be expected to result in death or to have lasted or be expected to last for a continuous period of not less than 12 months. An individual with a disabling impairment which is amenable to treatment that could be expected *to restore his ability to work* shall be deemed to be under a disability if he is undergoing therapy prescribed by his treatment sources but his impairment has nevertheless continued to be disabling or can be expected to be disabling for at least 12 months. . . ."

(Emphasis added.) The Secretary infers from this language that a finding of nondisability is justified if such treatment will restore the claimant's ability within the statutory twelve-month period. *Accord, Remington v. Folsom*, 157 F.Supp. 473 (N.D. N.Y.1957), *cited in Bradey v. Ribicoff*, 298 F.2d 855 (4th Cir. 1962). A claimant's initial burden in a disability determination is not, however, to show that he or she is precluded from engaging in *all* forms of work; rather, he or she need only show that the disability is such as to preclude a return to *former* employment. *The burden then shifts to the Secretary. Thorne v. Weinberger*, 530 F.2d 580 (4th Cir. 1976). The only appropriate way to reconcile the remedial disability concept with the limited burden placed on the claimant is to hold that the remedy noted by the Secretary must be one which will permit the claimant to return to his *former* line of work, at least where the remedy is noted in support of a finding that claimant has failed to satisfy the *threshold* burden of proving a disability.

■ Such an implicit finding is not supported by substantial evidence in the record before the court. The uncontradicted testimony of plaintiff was that her employment required long periods of immobility. Record at 53. It would seem, then, that plaintiff's former occupation was, at least to some degree, one which would *prevent* her from engaging in the therapy the Administrative Law Judge has recommended. This latter comment would also seem to apply with equal strength to plaintiff's earlier position as a woodworker.

The Administrative Law Judge similarly dismissed the claimant's diagnosed arthritis condition, noting that "no joint changes or limitation of motion is noted." Record at 11. However, Dr. Deskins *did* state that Mrs. Little would be functionally restricted from engaging in activities requiring heavy lifting as a direct result of her arthritis. Record at 70. This uncontradicted medical determination, together with plaintiff's uncontradicted testimony that she suffers severe arthritic pain in her hands and lower back, demonstrates plaintiff's inability to return to her former occupation in the shirt factory as a seamstress, requiring manual dexterity, significant physical exertion in lifting heavy objects, and long periods of immobility during the operation of the sewing machine (Record at 53). Even in the absence of the arthritic condition, the long periods of sitting required in plaintiff's former job suggest that her vertigo condition would preclude her from returning to this work if the Administrative Law Judge is correct in his determination that frequent changes in posture are necessary to compensate for the malady.

■ It does not appear to be within the authority of the Administrative Law Judge to take judicial notice of a supposed, available course of treatment in the absence of corroborating medical evidence in the record. *See Tyler v. Weinberger*, 409 F.Supp. 776, 788 (E.D.Va.1976) (error for Administrative Law Judge to rely on personal medical recommendation in absence of record of his medical qualifications). Such action by the hearing officer would represent a significant inroad on the rights of claimants to have their cases decided, to the extent possible, *on the record. Cf. McDaniel v. Celebrezze*, 331 F.2d 426 (4th Cir. 1964) (decided under 5 U.S.C. § 1006(d), now codified as amended at 5 U.S.C. § 556(e)).

■ There are other apparent errors in the Secretary's findings which at a minimum would require a remand for reconsideration. For example, plaintiff was diagnosed as suffering from menopausal syndrome as well as acute and chronic arthritis. Record at 80. The Administrative Law Judge's response was to take notice (again apparently without support in the record), that "this is a natural condition which time and medication will cure." Record at 11. Subsequently, the Administrative Law Judge dismissed from his consideration the effects of acute and chronic anxiety by noting the absence of evidence of bizarre or inappropriate behavior. Record at 12. It appears from the record, however, that no consideration was given to the possible cumulative effect of these maladies. Where impairments are medically related in

terms of their effect on the claimant, it is incumbent on the Secretary to consider the impairments together. *Landess v. Weinberger*, 490 F.2d 1187 (8th Cir. 1974).

Based on all the evidence before the Administrative Law Judge and the Appeals Council, plaintiff clearly established a *prima facie* case of disability preventing her from returning to her former employment. Upon such a showing the burden shifted to the Secretary to demonstrate that there exist specific jobs which plaintiff can perform and that such jobs exist in the economy. *Thorne v. Weinberger, supra.*

The Administrative Law Judge had no evidence before him of the existence of any jobs which plaintiff could perform. Dr. Deskins stated in a report on Mrs. Little's condition that she would be functionally restricted from heavy lifting due to arthritis, and from heights due to vertigo. Record at 70. The vertigo which, it appears from the medical evidence as well as the subjective evidence, has eluded successful treatment, has prevented the plaintiff from engaging in even the most rudimentary household chores because of the motion required. On the other hand, plaintiff's arthritis, which Dr. Deskins noted "particularly" affects plaintiff's spine (Record at 80), causes plaintiff great pain and prevents her from engaging in long sedentary periods in a sitting position. In view of this evidence, the court finds that the Secretary failed to demonstrate that there existed in the national economy specific jobs which plaintiff was capable of performing.

IT IS THEREFORE ORDERED that the Secretary's motion for summary judgment is denied; that plaintiff's motion for summary judgment is granted; and that the case is remanded to the Secretary for determination of the appropriate disability onset date and for computation and payment of the benefits for which plaintiff is eligible.

### ORDER

Plaintiff's counsel has petitioned for determination of a reasonable attorney's fee to be allowed by the court so that it may be certified by the Secretary and paid to counsel directly out of past-due benefits withheld by the Secretary for that purpose. See 42 U.S.C. § 406(b). The Secretary has been served with a copy of the petition but has not responded.

On October 13, 1978, the court filed an order on cross motions for summary judgment reversing the Secretary's denial of benefits to plaintiff and remanding the case to the Secretary for computation and payment of past-due benefits. By letter dated December 5, 1978, the court was informed by the United States Attorney that the Secretary, on remand, awarded $3,755.00 to Ms. Little. Under these circumstances the court has clearly rendered "a judgment favorable to [the] claimant" within the meaning of 42 U.S.C. § 406(b).

Plaintiff's counsel has submitted a verified motion detailing a total of eleven hours committed to the prosecution of the action in this court on behalf of plaintiff. It appears to the court that since September 19, 1977, to the date of the filing of counsel's petition, counsel rendered substantial, diligent and valuable services to plaintiff, resulting in the $3,755.00 award by the Secretary.

The entirety of counsel's services was rendered in connection with the suit in this court; no appeal has been taken by the Secretary.

Counsel has petitioned the court for an award of $500.00, considerably less than the statutory maximum of 25% of the award, which in this case would be $938.75. Counsel has noted with commendable forthrightness that the case was not an unusually complex one requiring any extraordinary services and that the court, in reversing the Secretary, did not adopt the precise line of reasoning argued by counsel in his brief for plaintiff.

Based on the foregoing and upon a consideration of the record as a whole, the court concludes that counsel is entitled to a reasonable attorney's fee under 42 U.S.C. § 406(b) of $650.00.

IT IS THEREFORE ORDERED that Harry B. Crow, Jr., attorney for plaintiff, is allowed an attorney's fee of $650.00.