**Frank AUBEUF, Plaintiff-Appellant,**

**v.**

**Richard SCHWEIKER, Secretary of Health and Human Services, Defendant-Appellee.**

**No. 939, Docket 80–6190.**

United States Court of Appeals, Second Circuit.

Argued March 25, 1981.

Decided May 4, 1981.

John S. Hogg, Hamilton, N. Y., for plaintiff-appellant.

Nancy S. Jones, Asst. U. S. Atty., for the N. D. of N. Y., Syracuse, N. Y., George H. Lowe, U. S. Atty., for the N. D. of New York, Syracuse, N. Y., for defendant-appellee.

Before OAKES and MESKILL, Circuit Judges, and SAND,* District Judge.

SAND, District Judge.

Frank Aubeuf appeals from a judgment of the United States District Court for the Northern District of New York, Howard G. Munson, J., affirming the decision of the Secretary of Health and Human Services that Mr. Aubeuf is not entitled to disability benefits under 42 U.S.C. § 423 or to supplemental security income benefits under 42 U.S.C. § 1382c(a)(3)(A). Mr. Aubeuf argues that there is no substantial evidence to support the findings of the Administrative Law Judge (ALJ) that he is not suffering from disabling pain and that he retains the functional capacity to engage in sustained work activity as a security person. We find, *inter alia*, that the ALJ applied an erroneous legal standard and reverse with instructions to remand the matter to the Secretary for further proceedings in accordance with this opinion.

I. *Background*

In August 1977, Mr. Aubeuf filed applications for disability insurance and supplemental security income benefits. His applications were denied, and, after a hearing

* Honorable Leonard B. Sand, United States District Judge for the Southern District of New York, sitting by designation.

and review by the Appeals Council, the Secretary affirmed that denial. Mr. Aubeuf and a vocational expert testified at the hearing, and reports and office notes of various physicians were submitted.

Mr. Aubeuf, a 33 year old functionally illiterate man, injured his back in August, 1975 while lifting a railroad tie in the course of his employment as a landscape foreman. He was hospitalized and underwent exercise therapy in the care of Dr. Brod. In the spring of 1976 he returned to landscaping work. Mr. Aubeuf soon left this job because of a personal conflict and fear of reinjuring his back. He then worked in a plating factory where he reinjured his back lifting a heavy rod. He was again hospitalized and unable to work. Dr. Brod again prescribed a program of exercise and walking.

In September, 1976, Mr. Aubeuf entered a vocational rehabilitation program and worked as a cook in a restaurant. However, Mr. Aubeuf left this job in December, 1976 because the temperature differential between the cooler and the kitchen, and the need to stand at a table and bend over (e. g., to peel potatoes) aggravated his back injury and caused him severe pain.

Mr. Aubeuf then moved to Texas in the hope that the warmer climate would be beneficial to him. He worked in a factory for a short time, but testified that he left that job because of continued back pain. Mr. Aubeuf then returned to New York.

At the hearing, Mr. Aubeuf testified that since his injury he has been in constant pain, that he has experienced intermittent momentary paralysis below the waist, and that the treatments he has received have not alleviated his pain.

Mr. Aubeuf's primary treating physician since his injury has been Dr. Brod.[1] Dr. Brod's office notes from December 19, 1975 through April 27, 1978 were submitted to the ALJ. Dr. Brod's early notes indicate consistent back pain, several hospitalizations, and a course of treatment consisting of physical therapy, medication and exercise. In his February 13, 1976 through August 27, 1976 notes, Dr. Brod refers to Mr. Aubeuf's walking program, pursuant to which he was walking up to 15 miles per day.[2] However, Dr. Brod's notes in October, 1976 and thereafter indicate that Mr. Aubeuf's condition generally deteriorated, with a few periods of improvement.[3] No mention is made of walking therapy after August 27, 1976. Dr. Brod ultimately concluded, on July 21, 1977, that the two years of conservative therapy had been ineffective, and that the possibility of a myelogram, a bone scan, and a laminectomy should be explored.

On November 1, 1977, Mr. Aubeuf was admitted to the hospital for a myelogram but had a bad reaction to a shot of Demoral, which led to his discharge. The myelogram was performed on November 7, 1977, and on November 29, 1977, Dr. Brod noted that it indicated a defect at the L5–S1 facet. Dr. Brod consulted with Dr. Yuan, and reported on January 12, 1978 that they were in agreement that surgery was not indicated "because of the remote possibility of relieving pain significantly with this surgery," and that alternate treatments should be explored.

Dr. Smyth examined Mr. Aubeuf on November 30, 1977 and reached a contrary conclusion with respect to surgery. He also found that Mr. Aubeuf's pain had worsened

1. Mr. Aubeuf was treated by Dr. Hessman while he was in Texas. Dr. Hessman reported that physical therapy and medication were ineffective. He diagnosed an "LS spine strain, R/O herniated nucleus pulposes." He had recommended a myelogram and possible laminectomy, but Mr. Aubeuf returned to New York. Dr. Hessman found pain and limitation of motion of the spine, but at that point, no neurological findings.

2. Dr. Brod also referred to walking therapy in a telephone report to the Social Security Administration on July 23, 1976.

3. In his telephone report to the Social Security Administration on September 2, 1977, Dr. Brod referred to a period in which Mr. Aubeuf's condition had improved and was in a state of remission. However, as Dr. Brod's October 21, 1977 and subsequent reports indicate, Mr. Aubeuf's condition deteriorated significantly after the September 2, 1977 telephone report.

since the myelogram and that Mr. Aubeuf walked "with a slight forward stoop"; that "there is a slight tilt of the lumbar spine to the right"; that "all movements of the lumbar spine are markedly restricted and on bending forward 15 degrees he experiences referred pain to the right thigh"; and that examination revealed positive straight leg raising with some atrophy and sensory impairment. Dr. Smyth concluded that Mr. Aubeuf was "partially disabled, moderate to marked in degree," and that after a laminectomy he would within one and a half years still be permanently partially disabled, but only mild in degree.

Mr. Aubeuf was examined by Dr. Kalmarides on February 2, 1978. Dr. Kalmarides found positive straight leg raising at 10 degrees on the right side and 20 degrees on the left side, and "definite blurring of the L4–L5 facet in the right oblique view with . . . evidence of loss of the joint space in this area." He also found "blurring of the joint space at the facet between L3 and L4 in the left oblique view." Dr. Kalmarides' opinion was that Mr. Aubeuf was suffering from "spondylitis of the Marie-Strumpell type." Dr. Kalmarides also noted Mr. Aubeuf's severe back pain, recommended against surgery without further conservative therapy, and considered Mr. Aubeuf as "temporary totally disabled."

At the hearing, the vocational expert, after reviewing the exhibits, was asked whether Mr. Aubeuf could perform any jobs, assuming that his back impairment limits his ability to bend severely, limits his ability to sit for prolonged periods, but does not restrict his ability to use his arms and hands or his ability to walk. The vocational expert answered that Mr. Aubeuf could not return to his former employment, but could work as a cook or as a security person. He described the duties of a security person or guard as primarily involving walking and standing, checking people in and out and punching a time clock. He testified that 200 security person positions exist in the region where Mr. Aubeuf resides. The vocational expert was next asked to assume that Mr. Aubeuf was suffering from lower back pain which would interfere with his ability to concentrate for a continuous period of eight hours. He responded that "there is nothing he could do." The vocational expert also testified that Mr. Aubeuf could not work if, in addition to his other limitations, he was subject to momentary attacks of paralysis below the waist.

In his decision, the ALJ reviewed portions of the medical reports and the testimony, and found that Mr. Aubeuf is not so disabled as to prevent him from performing any substantial gainful activity. The ALJ found that Mr. Aubeuf cannot return to his former employment; that he cannot sit for prolonged periods of time; that his ability to bend is limited; that he retains a normal range of motion of the arms and hands; and that there is no restriction on his ability to walk. The ALJ concluded, based on the vocational expert's testimony, that Mr. Aubeuf is capable of working as a security person,[4] and therefore denied Mr. Aubeuf's applications.

The ALJ's decision became a final decision of the Secretary when the Appeals Council denied Mr. Aubeuf's request for review. Mr. Aubeuf then sought review in the district court pursuant to 42 U.S.C. § 405(g). The district court found the Secretary's findings supported by substantial evidence, granted the Secretary's motion for summary judgment, and denied Mr. Aubeuf's cross motion.

## II. *Discussion*

It is well established that the burden of proving disability is on the claimant, 42 U.S.C. § 423(d)(5); *Parker v. Harris*, 626 F.2d 225, 231 (2d Cir. 1980); *Gold v. Secretary of H.E.W.*, 463 F.2d 38, 41 (2d Cir. 1972), and that "subjective *pain* may serve as the basis for establishing disability, even if such pain is unaccompanied by positive clinical findings or other 'objective' medical

---

4. Apparently in view of Mr. Aubeuf's testimony with respect to the deleterious effect of his attempt to work as a cook, the ALJ did not adopt the vocational expert's opinion that Mr. Aubeuf was capable of working as a cook.

evidence." *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979) (emphasis in original) (citations and footnote omitted). *See Hankerson v. Harris*, 636 F.2d 893, 895 (2d Cir. 1980).

▮ When the claimant has established that his impairment prevents him from returning to his previous employment, "the burden shifts to the Secretary, who must produce evidence to show the existence of alternative substantial gainful work which exists in the national economy and which the claimant could perform, considering not only his physical capability, but as well his age, his education, his experience and his training." *Parker v. Harris, supra*, 626 F.2d at 231 (citations and footnote omitted).[5] Finally, the factual determinations of the Secretary are conclusive unless they are unsupported by substantial evidence or are based on a legal error. *Marcus v. Califano, supra*, 615 F.2d at 27. Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971) (*quoting Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229, 59 S.Ct. 206, 217, 83 L.Ed. 126 (1938)).

With these principles in mind, we have reviewed the ALJ's decision and the administrative record in detail and we find merit in Mr. Aubeuf's contentions.

*A. Pain*

▮ Although the ALJ acknowledged that Mr. Aubeuf testified that the treatment and physical therapy prescribed by his doctors did not relieve his pain, and although the ALJ stated that he had reviewed the medical reports of Mr. Aubeuf's physicians, the ALJ appears to have reached a conclusion contrary to the testimony and medical reports by applying a requirement that the claimant "conclusively establish" through objective clinical findings a "neurological abnormality" or "mechanical derangement of the spine" which would establish a cause for his intense pain. Application of such a standard was clearly erroneous and we must therefore reverse. *Marcus v. Califano, supra*, 615 F.2d at 27.[6]

▮ Doubtless as a result of his erroneous view of the law, the ALJ focussed on the "objective" findings stated in the medical reports without giving sufficient weight to Mr. Aubeuf's treating physicians' acknowledgment that Mr. Aubeuf was suffering from a medically determinable impairment which caused him disabling pain. The ALJ's apparent rejection of the treating physicians' medical conclusions must be evaluated under the rule that "[t]he expert opinions of a treating physician as to existence of a disability are binding on the fact finder unless contradicted by substantial evidence to the contrary." *McLaughlin v. Secretary of H.E.W.*, 612 F.2d 701, 705 (2d Cir. 1980) (*quoting Bastien v. Califano*, 572 F.2d 908, 912 (2d Cir. 1978)). *See Alvarado v. Califano*, 605 F.2d 34, 35 (2d Cir. 1979); *Chiappa v. Secretary of H.E.W.*, 497 F.Supp. 356, 359–60 (S.D.N.Y.1980). We find no such substantial evidence in the record and the ALJ did not find Mr. Aubeuf's testimony incredible. *See Marcus v. Califano, supra*, 615 F.2d at 28.

There is no medical evidence disputing Mr. Aubeuf's claim of severe pain. Although the physicians disagreed with respect to whether surgery was indicated, their observations of Mr. Aubeuf's severe

---

5. *See Decker v. Harris*, 647 F.2d 291, 294, 298 (2d Cir. 1981). (*quoting Parker v. Harris, supra*); *Dousewicz v. Harris*, 646 F.2d 771, 772 (2d Cir. 1981) (same); *Timmerman v. Weinberger*, 510 F.2d 439, 442 (8th Cir. 1975) (the test is "whether a particular job is realistically within the physical and mental capabilities of the claimant."); *Kerner v. Flemming*, 283 F.2d 916, 921 (2d Cir. 1960) ("[W]hat can applicant do, and what employment opportunities are there for a man who can do only what applicant can do?").

6. See *McLaughlin v. Secretary of H.E.W.*, 612 F.2d 701, 704 (2d Cir. 1980); *Northcutt v. Califano*, 581 F.2d 164, 167 n.2 (8th Cir. 1978) ("[T]he holding by the Hearing Examiner that 'medically determinable' means 'supported by objective clinical or laboratory evidence' is clearly erroneous."); *Chiappa v. Secretary of H.E.W.*, 497 F.Supp. 356, 360 (S.D.N.Y.1980).

pain are consistent. Dr. Brod's final note on April 27, 1978 stated that Mr. Aubeuf was in "marked pain," a conclusion reached by all of the other physicians. The ALJ relied on two factors to rebut the treating physicians' observations and Mr. Aubeuf's testimony: Mr. Aubeuf's exhibition of "no outward signs that could be related to a severe pain complex" and the lack of "significant limitation" of Mr. Aubeuf's routine daily activities.

The first factor, to the extent it reflects the ALJ's view that objective evidence of a condition normally resulting in severe pain is required to establish a disability, is erroneous. *See Marcus v. Califano, supra,* 615 F.2d at 28. Moreover, to the extent this finding is based on the ALJ's observation of the claimant at the hearing, it is contradicted by the ALJ's comment at the hearing that Mr. Aubeuf was "sitting on one side"; by a Social Security Administration representative's observation that Mr. Aubeuf was in pain sitting in a folding chair and walked "holding himself very stiffly as if afraid to bend his back"; and by Dr. Smyth's observation that "he walks with a slight forward stoop and there is a slight tilt of the lumbar spine to the right"; and by other medical records. This finding also raises serious questions with respect to the propriety of subjecting claimants to a "sit and squirm index," [7] and with respect to rendition by the ALJ of an expert medi-

cal opinion which is beyond his competence.[8] Thus, the first factor does not constitute substantial evidence sufficient to rebut the physicians' findings of pain resulting from Mr. Aubeuf's back injury.

The second factor, Mr. Aubeuf's ability to perform routine daily activities, is also insufficiently supported by evidence to rebut the physicians' reports. Mr. Aubeuf testified that he normally wakes up at 6:30 A.M., that "[it] takes me a while to get straightened up and moving about. Have breakfast, sit, you know, around, watch TV, listen to the radio, go out in the yard, walk down the road"; that he can drive a car with difficulty and pain, and that he goes shopping and visiting with his wife. The ALJ did not explore at the hearing whether Mr. Aubeuf's routine activities were limited by his pain, but Dr. Brod's notes indicate that on some days Mr. Aubeuf could not wash dishes at home, and on others, could not sit up. The activities described by Mr. Aubeuf are not inconsistent with the painful back injury observed by his treating physicians, or with the ALJ's finding that Mr. Aubeuf is unable to bend, or with an inability to work an eight hour shift on a job requiring both extensive walking and bending,[9] and therefore do not, alone or in combination with the ALJ's observations of Mr. Aubeuf at the hearing, constitute sub-

**7.** *Tyler v. Weinberger,* 409 F.Supp. 776, 789 (E.D.Va.1976) ("Clearly, a 'sit and squirm' index, as plaintiff calls it, applied by a judge who is not a medical expert will not only result in unreliable conclusions when observing claimants with honest intentions, but may encourage claimants to manufacture convincing observable manifestations of pain or, worse yet, discourage them from exercising their right to appear before an Administrative Law Judge for fear that they may not appear to the unexpert eye to be as bad as they feel.").

**8.** *See Wilson v. Califano,* 617 F.2d 1050, 1054 (4th Cir. 1980); *Day v. Weinberger,* 522 F.2d 1154, 1156 (9th Cir. 1975); *Helms v. Califano,* 473 F.Supp. 1329, 1334 (W.D.N.C.1979); *Little v. Califano,* 462 F.Supp. 575, 580 (W.D.N.C. 1978); *Smith v. Califano,* 457 F.Supp. 145, 147 (D.Md.1978), *aff'd without op.,* 610 F.2d 813 (4th Cir. 1979); *Tyler v. Weinberger, supra* note 7, 409 F.Supp. at 788.

**9.** The ALJ also found it "significant" that Mr. Aubeuf was taking no medication for pain. However, the Secretary's decision was not based on 20 C.F.R. § 404.1530, 45 Fed.Reg. 55,589 (1980), or 20 C.F.R. § 416.930, 45 Fed. Reg. 55,626 (1980), which provide that an individual who fails to follow prescribed treatment "without good reason" will not be found disabled or will be discontinued. Therefore, the question whether a claimant may be required to pursue a particular course of treatment is not before us. In any event, Dr. Brod's office notes indicate that the prescribed medication was either ineffective or caused negative side effects, and there is no evidence in the record that Mr. Aubeuf failed to follow a prescribed course of treatment. Certainly, it is not within the ALJ's competence to prescribe treatment and he did not purport to do so.

stantial evidence to rebut the conclusions of Mr. Aubeuf's physicians.[10]

On remand, the Secretary should "reconsider appellant's application for benefits under the standard that a medical impairment which results in severe, disabling pain may give rise to a grant of disability benefits even if 'objective' clinical findings do not provide proof of an affliction ordinarily causing such pain," *Marcus v. Califano, supra*, 615 F.2d at 28, and the Secretary should give binding effect to the treating physicians' expert opinions unless they are contradicted by substantial evidence. *McLaughlin v. Secretary of H.E.W., supra*, 612 F.2d at 705.[11]

*B. Residual Functional Capacity*

In view of our conclusion that the ALJ's decision with respect to the disabling effect of Mr. Aubeuf's pain was based on an erroneous legal standard, is not supported by substantial evidence and must be reconsidered, the ALJ must also reconsider whether he should have adopted the vocational expert's view that, if Mr. Aubeuf suffers pain which would interfere with his ability to concentrate, he could not perform any job. This question cannot be addressed until after there has been a reconsideration of the issue of Mr. Aubeuf's pain in accordance with Part II. A. of this opinion.

Although the ALJ found that Mr. Aubeuf is not so disabled as to prevent him from performing any work, he found that Mr. Aubeuf is unable to return to his former employment. Thus, the burden shifted to the Secretary to produce evidence of alternative employment which Mr. Aubeuf could realistically perform. *Parker v. Harris, supra*, 626 F.2d at 231. *See* note 5, *supra*. The ALJ called a vocational expert to address the question of alternative employment. The vocational expert was asked hypothetical questions designed to establish whether Mr. Aubeuf retained the capacity to perform any specific job. The vocational expert's testimony is only useful if it addresses whether the particular claimant, with his limitations and capabilities, can realistically perform a particular job. *See Parker v. Harris, supra*, 626 F.2d at 231; note 5, *supra*.[12] The hypothetical question on which the ALJ apparently based his finding that Mr. Aubeuf can work as a security guard incorporated the ALJ's conclusion with respect to pain which we have found to be based on an erroneous standard, and did not adequately account for Mr. Aubeuf's actual limitations. We therefore reverse the Secretary's determination that Mr. Aubeuf has the capacity to work as a security person and remand for reconsideration of Mr. Aubeuf's realistic capacity to perform an alternative job.

The ALJ also included as an assumption in his hypothetical questions, and later found, that Mr. Aubeuf's ability to walk was unrestricted. This finding is contrary to Mr. Aubeuf's testimony and it appears to be based on several entries in Dr. Brod's notes in 1976, which indicated that Mr. Aubeuf's condition was improving and that he

**10.** The cases cited by the Secretary do not alter our conclusion. Those cases involved either significantly more extensive activities which undermined the claimant's credibility, or conflicting medical evidence. *See Deyo v. Weinberger*, 406 F.Supp. 968, 973–74 (S.D.N.Y.1975) ("the claimant's activities of driving [his] wrecker to the junk yard after he allegedly became disabled, maintaining a garden, buying and driving a pick-up truck, going fishing, going grocery shopping, and attending bingo appear inconsistent with the varied symptoms stated by him" in somewhat evasive answers); *Carter v. Finch*, 308 F.Supp. 954, 957 (S.D.W. Va.1969), *aff'd* 421 F.2d 702 (4th Cir. 1970) (conflicting medical evidence); *Seminick v. Weinberger*, [1974–75] Unempl. Ins. Rep.

(CCH) ¶ 14,109 at 2169 (D.R.I.1975) (conflicting medical evidence).

**11.** We reject the Secretary's argument that Mr. Aubeuf's acute back pain episodes did not last the required 12 months. This contention is contrary to the evidence and the ALJ's findings.

**12.** *See also Gilliam v. Califano*, 620 F.2d 691, 693–94 (8th Cir. 1980) ("We conclude that the vocational expert's testimony was fatally deficient because the hypothetical question failed precisely to set out all the claimant's impairments."); *Stubbs v. Mathews*, 544 F.2d 1251, 1257 (5th Cir. 1977).

was walking 7 to 15 miles per day.[13]  Dr. Brod treated Mr. Aubeuf almost continuously until the hearing.  His notes subsequent to October 21, 1976 indicate that the optimism expressed in the early 1976 entries was not confirmed by subsequent developments, that Mr. Aubeuf's condition was deteriorating, and that the walking therapy was discontinued.  There is no mention of substantial walking by Mr. Aubeuf after October, 1976, and there is no other evidence in the record that after October, 1976 Mr. Aubeuf walked, or was able to walk, 15 miles per day or any other long distances, or that he could walk continuously during an eight hour shift as a security guard.

■ We also find that the vocational expert's description of the duties of a security guard ("primarily walking and standing", "checking people in and out . . . [and] punching a time clock") did not provide substantial evidence for the ALJ's implicit conclusion that Mr. Aubeuf would not be required to bend during the course of his security guard duties,[14] or for his explicit conclusion that Mr. Aubeuf would be able to alternate between sitting, standing and walking throughout the course of an eight hour work day as a security guard.  It also did not support the ALJ's apparent assumption that Mr. Aubeuf's illiteracy would not interfere with his duties as a security guard.

On remand, after consideration of Mr. Aubeuf's pain and the reports of his treating physicians in accordance with Part II.A. of this opinion, the Secretary should reconsider, if appropriate, Mr. Aubeuf's realistic ability to perform any particular job.

### III.  *Power to Remand*

■ The remand provision of 42 U.S.C. § 405(g) was amended on June 9, 1980, P.L. 96–265 § 307, 94 Stat. 458 (1980), and several courts have recognized that the amendment was at least in part designed to limit federal court remands to the Secretary. *See Rosario v. Secretary of Health and Human Services*, 512 F.Supp. 874, 878 n.6 (S.D.N.Y.1981); *Saunders v. Schweiker*, 508 F.Supp. 305, 308 (W.D.N.Y.181); *Boyle v. Harris*, 506 F.Supp. 294 (E.D.Pa.1980); *Torres v. Harris*, 502 F.Supp. 518, 520, 526–27 (E.D.Pa.1980); *Birchfield v. Harris*, 506 F.Supp. 251, 252–53 (E.D.Tenn.1980).  Having concluded that Mr. Aubeuf's claim should be remanded to the Secretary for reconsideration under the correct legal standards and for reconsideration of the ALJ's findings which were not supported by substantial evidence, we must consider whether our power to order such a remand has been altered by the amendment.[15]

The amendment to section 405(g) did not alter either the substantial evidence rule [16]

---

13. The district court also gave unwarranted consideration to these early entries by Dr. Brod, stating that "plaintiff walks 15 miles per day." *Aubeuf v. Harris*, No. 78–450, slip op. at 7 (N.D.N.Y. July 30, 1980).

14. *See Bastien v. Califano, supra*, 572 F.2d at 912 ("[I]t is insufficient for the Secretary to assert that Bastien might do jobs of a light and sedentary nature such as checker without providing a job description clarifying the nature of the job, demonstrating that the job does not require significant stooping and walking.") (citation omitted).

15. Section 405(g), as amended, provides, in relevant part:
"The court shall have power to enter, upon the pleadings and transcript of record, a judgment affirming, modifying, or reversing the decision of the Secretary, with or without remanding the cause for a rehearing.  The findings of the Secretary as to any fact, if

supported by substantial evidence, shall be conclusive . . . . *The court may, on motion of the Secretary made for good cause shown before he files his answer, remand the case to the Secretary for further action by the Secretary, and it may at any time order additional evidence to be taken before the Secretary, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding* . . . ."
42 U.S.C.A. § 405(g) (Sept. 1980 Supp.) (new language emphasized).

16. A Senate proposal would have "modif[ied] the scope of federal court review so that the Secretary's determinations with respect to facts would be final, unless found to be arbitrary and capricious."  S.Rep. No. 96–408, 96th Cong.2d Sess. 59, *reprinted in* [1980] U.S.Code Cong. & Ad.News 2481, 2541.  This proposal

or the provision that a reviewing court may affirm, modify or reverse the Secretary's decision, "with or without remanding the cause for a rehearing." *Dousewicz v. Harris*, 646 F.2d 771, 773 (2d Cir. 1981). However, it does make two changes. First, it replaced the direction that the court "shall" remand for further action upon pre-answer motion by the Secretary, with a requirement that the Secretary show good cause for a remand, and that the court "may" then remand. *Compare* 42 U.S.C. § 405(g) (1976) *with* 42 U.S.C.A. § 405(g) (Sept. 1980 Supp.) 94 Stat. 458 (1980).[17] Second, it replaced the provision that the court "may, at any time, on good cause shown, order additional evidence to be taken before the Secretary," 42 U.S.C. § 405(g) (1976) with a provision that the court may order additional evidence to be taken before the Secretary, "only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." 42 U.S.C.A. § 405(g) (Sept. 1980 Supp.).

We are not concerned on this appeal with a remand for submission of new evidence which the claimant or the Secretary did not previously submit, *cf. Birchfield v. Harris, supra,* or with a motion by the Secretary to remand the case prior to the filing of an answer. Our decision mandates a remand after the reviewing court has concluded that the Secretary applied erroneous legal standards and arrived at a determination unsupported by substantial evidence. This type of remand was not limited by the amendment, *see Dousewicz v. Harris, supra,* at 773; H.R.Rep.No.96–100, 96th Cong., 1st Sess. 13 (1979),[18] and it is therefore unnecessary for us to determine whether the amendment should be applied retroactively, *see Rosario v. Secretary of Health and Human Services, supra* 512 F.Supp. at 878 n.6.

■ Thus, a remand to the Secretary to reconsider Mr. Aubeuf's application under the correct standards for evaluating pain, for weighing the opinions of treating physicians, for questioning a vocational expert, and for determining whether an alternative job is within the realistic capabilities of the claimant is not precluded by the amendment of section 405(g).

Accordingly, we reverse the judgment of the district court with instructions to remand this case to the Secretary for further proceedings consistent with this opinion.

MESKILL, Circuit Judge (dissenting):

The majority today relies on a concrescence of inapplicable and apparently unrelated judge-made rules to avoid the strictures of the "substantial evidence" scope of review. Because I believe that none of

---

was rejected because of "uncertainty of the ramifications of the rule proposed and the concern that the administrative process is not operating with the degree of creditability which would justify elimination of the 'substantial evidence rule.'" Subcommittee on Social Security of the House Committee on Ways and Means, 96th Cong.2d Sess., Disability Amendments of 1980—H.R. 3236, at 8 (Comm. Print 1980). However, although the continued need for substantial evidence review was acknowledged, and Congress recognized that many remands are appropriate, a concern with the perceived failure of the courts to adhere to the principles of the substantial evidence rule was expressed. *Id.*; S.Rep. No. 96–408, *supra* at 58, *reprinted in* [1980] U.S.Code Cong. & Ad.News at 2540; H.R.Rep.No.96–100 96th Cong. 1st Sess. 13 (1979).

17. *See* Subcommittee on Social Security of the House Committee on Ways and Means, 96th Cong.2d Sess., Disability Amendments of 1980

—H.R. 3236, at 7 (Comm. Print 1980) (absolute authority of Secretary to obtain remand prior to answer replaced by court discretion after showing of good cause).

18. "Your committee's amendment would require that a remand would be authorized only on a showing that there is new evidence which is material, and that there was good cause for failure to incorporate it into the record in a prior proceeding. The Center for Administrative Justice in its report pointed out that such a provision is contained 'in nearly all comparable review statutes.' This language is not to be construed as a limitation of judicial remands currently recognized under the law in cases which the Secretary has failed to provide a full and fair hearing, to make explicit findings, or to have correctly apply [sic] the law and regulations."
H.R.Rep.No.96–100, 96th Cong. 1st Sess. 13ₗ (1979).

these rules is applicable, and because I fear that the Court is increasingly involving itself in the business of orthopedics, I dissent.

### I.

Frank Aubeuf without question suffers from a bad back which prevents him from returning to the heavy work to which he is accustomed. This ailment manifests itself objectively, by restricting the claimant's ability to lift, bend, sit and twist, and subjectively, by causing him pain. Other than the dispute concerning Aubeuf's ability to walk without restriction—a point which I will discuss later—there seems to be little argument over the objective limitations upon the claimant's movement. Instead, as the majority correctly points out, the question is whether his physical restrictions, together with the accompanying *pain*, constitute an "impairment" which prevents Aubeuf from returning to any form of substantial gainful activity. Unlike the majority, I believe that substantial evidence supports the ALJ's finding that "[t]he claimant retains the residual functional capacity to engage in sustained work activity as a security person."

Section 405(g), incorporated by § 421(d), states that "[t]he findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g) (1976). Substantial evidence means "such relevant evidence as a reasonable man might accept as adequate to support a conclusion." *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 217, 83 L.Ed. 126 (1938). *See Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971); *Bastien v. Califano*, 572 F.2d 908, 912 (2d Cir. 1978). Given these rather straightforward standards, one would imagine that the task of this Court would be to examine whether there was sufficient evidence in the record to substantiate the ALJ's finding of disability. Instead, the majority invokes a series of inapplicable legal rules in an attempt to invert the statutory burden of proof on the issue of impairment.

First, the majority claims that the ALJ erred "by applying a requirement that the claimant 'conclusively establish' through objective clinical findings a 'neurological abnormality' or 'mechanical derangement of the spine' which would establish a cause for [Aubeuf's] intense pain." Had the ALJ so required, I would be in full support of reversal. It is settled that "subjective *pain* may serve as the basis for establishing disability, even if such pain is unaccompanied by positive clinical findings or other 'objective' medical evidence." *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979); *Hankerson v. Harris*, 636 F.2d 893, 895 (2d Cir. 1980); *McLaughlin v. Secretary of HEW*, 612 F.2d 701, 704 (2d Cir. 1980). *See generally Cutler v. Weinberger*, 516 F.2d 1282, 1286–87 (2d Cir. 1975). But the assailed language, taken from one paragraph of the ALJ's decision, was directed only at the claimant's objective symptomology, and concludes only that there is no readily identifiable neurological basis for Aubeuf's pain. The following paragraph, concerned with the existence of the pain itself, states in pertinent part:

> The claimant's chief problem then, stemming from his injury in August of 1975, has been lumbosacral strain, the consequence of which has been a certain degree of discomfort. The ultimate issue to be decided in this case, is whether the claimant would be precluded from returning to any form of substantial gainful activity, due to the existence of a disabling impairment, including pain. It is true that pain, in of itself, may be disabling. However, as is the case with any other allegation, the assertion of pain is subject to review in light of all of the evidence in the case.

This approach is perfectly consistent with our prior decisions. *See Miles v. Harris*, 645 F.2d 122, 124 (2d Cir. 1981); *Vega v. Harris*, 636 F.2d 900, 904 (2d Cir. 1981) (per curiam); *Marcus v. Califano*, *supra*, 615 F.2d at 27. Indeed, in *Marcus* this Court stated that while subjective evidence of pain should be considered,

> [i]t also is clear, however, that the Secretary is not obliged to accept without

question the credibility of such subjective evidence. The ALJ has discretion to evaluate the credibility of a claimant and to arrive at an independent judgment, in light of medical findings and other evidence, regarding the true extent of the pain alleged by the claimant.

*Id.* at 27 (citations omitted).

Second, the majority contends that "[d]oubtless as a result of [the ALJ's] erroneous view of the law" set forth above, he failed to follow the rule that "[t]he expert opinions of a treating physician as to the existence of a disability are binding on the fact finder unless contradicted by substantial evidence to the contrary." *Bastien v. Califano, supra,* 572 F.2d at 912. In the first place, it is not at all clear that Drs. Smyth and Kalmarides were in fact Aubeuf's "treating physicians"; indeed, the majority suggests that Dr. Brod occupied that role. Presumably, the reason that a treating physician's opinion is given such weight is the experience gained from repeated observation and treatment of the patient. The record reveals that Drs. Smyth and Kalmarides were consulted only a few times in connection with a workman's compensation claim arising out of a job-related injury at the plant of a previous employer. But putting that question aside, the more significant issue surrounds the word "disability." "Disability" means different things to different people; to the Secretary, it means the "inability to engage in any substantial gainful activity by reason

of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1) (1976). The "expert medical opinions" in this case, which were issued in the context of a workmen's compensation dispute, state that "[a]t the moment [Aubeuf] is partially disabled moderate to marked in degree" and that Aubeuf is "temporary [sic] totally disabled." The latter opinion continues, almost incomprehensibly, "The prognosis should be good eventually for a basis for a permanent partial disability, mild in character." The statute does not provide for such degrees of disability; it speaks in absolutes. Obviously, a treating physician's opinion that a patient is disabled should be accorded weight only if there is some showing that the doctor was using the appropriate standard of disability. By the very language of the medical opinions in this case it is clear that we do not have apples and apples.

Having determined that the "expert opinions" in this case deserve no procedural favors, it is clear that substantial evidence supports the ALJ's determination that Aubeuf does not suffer a "physical impairment" which prevents him from doing any work. The ALJ could have reasonably relied on Aubeuf's ability to perform his daily routine,[1] together with his testimony and demeanor[2] at the hearing, to conclude that Aubeuf did not suffer from *disabling* pain.

---

1. The majority observed that "[t]he activities described by Mr. Aubeuf are *not inconsistent* with the painful back injury observed by his treating physicians . . . ." (Emphasis added.) While such an observation may be sufficient to warrant reversal where the ALJ is contradicting a treating physician's opinion of disability, it is a patently inappropriate standard—certainly not the "substantial evidence" standard—by which to overturn the ALJ's finding in the absence of such a medical opinion. Whatever this standard is, it is not the "substantial evidence" scope of review.

2. The majority suggests that observation of a claimant's demeanor "raises serious questions with respect to the propriety of subjecting claimants to a 'sit and squirm index,' and with respect to rendition by the ALJ of an expert

medical opinion which is beyond his competence." (Footnotes omitted.) Until now, it has been settled in this Circuit that, in assessing subjective pain, an ALJ may rely in part upon observations of a claimant's outward appearance during the hearing. *See Miles v. Harris,* 645 F.2d 122, 124 (2d Cir. 1981); *Vega v. Harris, supra,* 636 F.2d at 904. Moreover, in *Vega,* the court specifically rejected the argument that the ALJ's observation of the claimant results in a rendition of lay medical opinion:

> In assessing the credibility of [the claimant's] testimony as to pain, the ALJ, by observing her ability to move her joints, did not interject a lay medical opinion.

*Id.* at 904. In suggesting that such a policy fosters a "sit and squirm index" the majority

## II.

I agree with the majority that after Aubeuf demonstrated that his back injury prevented him from returning to his former work, the burden then shifted to the Secretary to "produce evidence to show the existence of alternative substantial gainful work which exists in the national economy and which the claimant could perform, considering not only his physical capability, but as well his age, his education, his experience and his training." *Parker v. Harris*, 626 F.2d 225, 231 (2d Cir. 1980). The Secretary satisfied this burden by producing an expert witness who testified that Aubeuf could, despite his impairments, work as a security guard. The majority levels three criticisms at this determination; none is persuasive.

First, the majority points out that the vocational expert testified in response to hypothetical questions and argues that a "vocational expert's testimony is only useful if it addresses whether the particular claimant, with his limitations and capabilities, can realistically perform a particular job." To the extent that this criticism suggests that asking hypothetical questions is *per se* an inappropriate means for eliciting expert vocational testimony, I have found no decision in our Circuit to support this proposition. But more important, the hearing transcript reveals that the vocational expert in this case was clearly familiar with "the particular claimant":

Q. Have you reviewed the exhibits in this case?

A. Yes, I have.

Q. And based on your review of those exhibits and the testimony of the claimant, what is his vocational background?

A. His vocational background is varied. He's done farm work; he's done cooking; he's done stock handling; he was a set-up man, shop steward, utility man; and he ran a variety of machines; and also worked as—in landscaping.

The occupational significant [sic] of eye-hand coordination, making decisions concerning repairs, directing people, knowledge of machines.

From a physical demands point of view it involves bending, reaching, lifting, stooping, seeing, feeling, talking.

Q. Okay. Thank you. Now, I want you to assume that the claimant's back impairment limits his ability to bend, severely, that his ability to sit for prolonged periods is limited, that he has a normal ability to use his arms and hands, and that he is capable of walking, that there's no restriction on walking.

Now, given those limitations, are there any jobs he can perform, considering his background?

A. Yes.

Q. And what are these jobs?

A. It precludes all of the work that he's had previously.

Q. Anything else he could do, notwithstanding those limitations?

A. Yes. He can work as a security person.

It is clear that this vocational expert was not offering merely abstract and hypothetical testimony.

Second, the majority suggests that the ALJ erred in positing that the claimant's ability to walk was "unrestricted." In the first place, the vocational expert, who was familiar with Aubeuf's records and who was present during Aubeuf's testimony, certainly understood that "unrestricted" did not mean literally "without any restriction." Indeed, few persons could match such a physical profile. Rather, "unrestricted" was used in a vocational sense, with the demands of "light" work[3] in mind.

seems to underestimate the ability of ALJs, who hear hundreds of these cases, to see through a claimant's contrived limps and winces. An ALJ, like any other trier of fact, should be allowed to consider this factor for what it is worth; in many cases, of course, the ALJ will conclude that it is worth very little.

3. The vocational expert classified the physical demands of various jobs as "light," "medium," or "heavy." It is clear from the expert's testimony that he was considering only "light" work for the claimant. ·

Viewed in this context, the ALJ's statement concerning the absence of walking restrictions was proper and supported by the record. For example, Aubeuf testified that, although walking causes him pain, the pain does not limit his ability to walk:

Q. So when you walk you're in pain?

A. Oh, yes. My pain never stops.

Q. Well, does it limit your ability to walk?

A. No, because I force myself.

When asked whether there was any job he could do despite his impairment, Aubeuf responded, "Well, the best thing, I think, is, you know, a job walking around . . . ." On this basis, the ALJ could reasonably have accepted the expert's conclusion that Aubeuf's ailment, while causing him some pain during walking, did not restrict his ability to perform the walking duties of a security guard.

Finally, the majority states that the vocational expert's description of the duties of a security guard "did not provide substantial evidence for the ALJ's implicit conclusion that Mr. Aubeuf would not be required to bend during the course of his security guard duties, or for his explicit conclusion that Mr. Aubeuf would be able to alternate between sitting, standing, and walking" during the course of his security work. There is no authority for this novel proposition. *Bastien v. Califano, supra*, which is cited in support of the point, involved an ALJ's vague conclusion, in the *absence* of expert vocational testimony, that the claimant appeared able to perform "jobs of a light and sedentary nature such as that of a checker." 572 F.2d at 911. This Court held that an ALJ could not, on the basis of his own lay experience, reasonably conclude that a claimant has a given job capability "without providing a job description clarifying the nature of the job . . . ." *Id.* at 912–13. The whole point, it seems to me, is to require the Secretary to produce expert vocational evidence that a claimant who cannot return to his former job can nevertheless do other work that exists in the national economy. *See Parker v. Harris, supra*, 626 F.2d

at 233–34 (in absence of expert vocational testimony, Secretary's conclusion that claimant could perform "light or sedentary" work was unjustified).

### III.

As the district court observed, "[d]enying statutory benefits to people in need of assistance is an unpleasant task." Once again, in the name of compassion this Court has flouted statutorily imposed standards concerning our scope of review. As I recently stated in dissent:

The temptation to blur the distinction between individual need and statutory eligibility is strong; but our authority as judges often fails to match our sympathy for our fellow human beings. Absent constitutional transgressions, we have no more power to disregard the substantive and procedural eligibility limitations built into legislative benefit schemes than we have to change the nature and scope of the benefits themselves. It should not be otherwise. By in effect trying cases *de novo* at the district court and even court of appeals level, as the majority does here, we reduce the entire administrative process to a mere rehearsal for the actual determination, thereby ensuring that we will be seeing an ever-increasing number of these cases in the courts in the years to come.

*Singletary v. Secretary of HEW*, 623 F.2d 217, 220 (2d Cir. 1980) (Meskill, J., dissenting) (footnote omitted). This prophecy is fast becoming reality, and today's decision will only serve to exacerbate the problem. I dissent.