**Albert W. MEYER, Plaintiff,**

v.

**Richard S. SCHWEIKER, Secretary of Health and Human Services, Defendant.**

**No. CIV–80–1083C.**

United States District Court, W.D. New York.

Oct. 27, 1982.

---

Godinho & Hargesheimer, Hamburg, N.Y. (Douglas Godinho, Hamburg, N.Y., of counsel), for plaintiff.

Salvatore R. Martoche, U.S. Atty., Buffalo, N.Y. (C. Donald O'Connor, Asst. U.S. Atty., Buffalo, N.Y., of counsel), for defendant.

CURTIN, Chief Judge.

This is an appeal from the denial of plaintiff's application for Social Security disability insurance benefits under Title II of the Social Security Act by the Secretary of the Department of Health and Human Services. Plaintiff Albert Meyer claims his list of impairments, including painful back ailments, knee problems, heart-related problems, rales and wheezing in his chest, dizziness, blackouts, headaches, and a severe emotional disorder renders him disabled within the meaning of the Social Security Act.

## FACTS AND DISCUSSION

Albert Meyer was fifty-four years old when he first applied for Social Security disability benefits. He completed high school through tenth grade, and worked regularly between 1945 and 1979. Begin-

ning in 1948, Meyer worked as a steel fabricator in a Buffalo plant. In that capacity he cut, reshaped, assembled, and welded steel. At times he lifted loads of up to 150 pounds when hoists could not be used. Meyer "snapped his back" at work in February 1979 while bending a 16-gauge piece of steel.[1] He has not worked since that accident.

Meyer applied for Social Security disability benefits on October 26, 1979. After his application was denied both initially and on reconsideration, he appeared at a hearing before an Administrative Law Judge. Meyer was accompanied only by his wife who also testified briefly on his behalf. A vocational expert was the only person to testify in addition to the Meyers.

At the hearing, Mr. Meyer described his numerous symptoms. He explained he has trouble walking, that his knees puff up, sitting strains his lower back, and the longer he sits "the higher it goes" (Record, p. 28). He testified he cannot stoop, bend, pull, or push, but he could lift up to fifteen to twenty pounds (Record, p. 29). Despite his many other ailments, Meyer described his chief impairments as his back, ankles, swelling, and his nervous condition. According to Meyer, his back pain is constant and severe, and flares up if any strain is placed upon it. Finally, Meyer mentioned his spells of dizziness and his nervous condition several times during his hearing.

The various medical records before the Administrative Law Judge ascribe Meyer's physical problems to various causes. The diagnoses include vertebrae disc space narrowing, spondylolisthesis, arthritis (Record, p. 85), swelling of his legs, edema, plebitis (Record, pp. 78, 79, 89, 90, 91), arthritis in his knee (Record, p. 72), hypertension, excessive blood pressure, systolic heart mur-

mur, and a heart click (Record, pp. 69, 76–78, 81, 82). The Veterans Administration Hospital Summary Sheet also referred, *inter alia,* to Meyer's essential labile hypertension and anxiety reaction (Record, p. 69).

Despite these various diagnoses, the Administrative Law Judge found that Meyer's only serious disabilities were the arthritis in his spine and right knee, and the possible degenerative disc disease, and that these impairments prevented Meyer from performing his former work as a steel fabricator. *See* Administrative Law Judge's Findings, Nos. 2, 5, (Record, p. 15). He nevertheless found that Meyer's physical infirmities did not prevent him from transferring his job skills to sedentary work. Applying these factors to Table No. 2 of Appendix 2, 20 C.F.R. Subpart P, Rules 202.03, 202.12, the Administrative Law Judge ruled that plaintiff was not disabled within the meaning of the Social Security Act.[2]

## STATUTORY FRAMEWORK

To be entitled to Social Security disability benefits, a claimant's health must be so impaired that he or she is unable to perform either his or her previous work or any other substantial gainful work existing in the national economy. 42 U.S.C. § 423(d)(2)(A); *Parker v. Harris,* 626 F.2d 225, 230–31 (2d Cir.1980). Once a claimant has demonstrated that his or her medical impairment prevents him or her from returning to his or her former work, the burden of persuasion shifts to the Secretary. The Secretary must show the existence of alternative substantial gainful employment which exists in the national economy and which the claimant can perform, given his or her physical and mental capabilities, age, education, experience, and training. *Parker v. Harris, supra* at 630.

---

1. Plaintiff currently receives workmen's compensation for this injury. He also receives a 50% disability pension from the Veterans Administration for "nervousness" and emotional disorders (*see* Record, pp. 27–28).

2. In his Finding No. 6, the Administrative Law Judge found that Meyer had the residual functional capacity for sedentary work. Inexplicably, though, he applied his findings to Table No. 2, which relies on a claimant's ability to perform light work, rather than Table No. 1, which applies to sedentary work. However, because the Administrative Law Judge also found that claimant had some transferable skills (Finding No. 9, Record, p. 15), reliance on Table No. 1 would not have altered the Administrative Law Judge's decision. *See* Table No. 1, Rules 201.03, 201.10.

**1246**

■ A court must affirm the Secretary's decision if it is supported by "substantial evidence," that is, relevant evidence which a reasonable mind might accept as adequate to support a conclusion. *Parker v. Harris, supra* at 231–32. If such evidence is lacking, or if errors of law were made during the administrative process, the reviewing court may reverse or remand the decision for further administrative proceedings. *Marcus v. Califano,* 615 F.2d 23, 27 (2d Cir.1979).

DISCUSSION

A. *Disability Determination*

In reaching his decision, the Administrative Law Judge disregarded several major considerations governing Social Security disability determinations. The first concerns the Administrative Law Judge's evaluation of plaintiff's pain.

The Second Circuit's standard for assessing pain has long been that:

> ... subjective pain may serve as the basis for establishing disability, even if such pain is unaccompanied by positive clinical findings or other 'objective' medical evidence.

*Aubeuf v. Schweiker,* 649 F.2d 107, 111–12 (2d Cir.1981), *citing Marcus v. Califano,* 615 F.2d 23, 27 (2d Cir.1979). The Administrative Law Judge did not altogether ignore plaintiff's complaints about his pain. Yet, he applied an erroneous rule of law when he found that plaintiff's pain and discomfort were not severe enough to prevent him from performing light or sedentary work (Administrative Law Judge's Evaluation, Record, p. 14).

As discussed above, plaintiff testified at the hearing that he suffered severe pain from his ailments, and experienced great difficulty in performing day to day functions. Except for Dr. Robert Early, the Social Security Administration's consulting physician, the other doctors' medical opinions included in the record acknowledged plaintiff's complaints of disabling pain even though none was able to pinpoint the physiological origin of the pain with any precision. In a 1979 opinion submitted at the request of the State Insurance Fund follow-ing Meyer's compensation application, Dr. Eugene Hanavan wrote that despite plaintiff's subjective complaints, he could find no objective evidence of any orthopedic or neurologic disability. At the request of plaintiff's treating physician, Dr. Arthur Prestine, an orthopedic surgeon, Dr. A.J. Marano examined plaintiff and noted that plaintiff complained of severe lower back pain, as well as an inability to walk longer than fifteen minutes, lie on his back, or bend down. He observed that plaintiff's movements were "guarded due to pain," and that his right knee manifested severe crepitation on flexion and extension. In Dr. Marano's opinion, plaintiff was disabled due to underlying arthritis.

Dr. Early offered the only evidence seemingly contradicting plaintiff's subjective complaints of pain. He wrote that plaintiff did not complain to him of back pain when he bent his legs or rotated his hips. He also noted that he did not observe any signs of crepitation in plaintiff's knees. Even so, he still found Meyer partially disabled for "bending, lifting, and carrying" as a result of "mild to moderate hypertrophic arthritis of the lumbosacial spine," although he observed "no other objective evidence of disability." Moreover, Dr. Early may have implicitly accounted for plaintiff's lack of pain complaints to him by his ambiguous statement that, "This applicant appears relaxed and self confident of his disability which may be due to his ingestion of 4 5-mg. of Valium tablets per day" (Record, pp. 83–84).

Thus, other than Dr. Early's ambivalent report, the bulk of the evidence in the record indicates that plaintiff suffers from intense pain. The central reason the Administrative Law Judge rejected plaintiff's subjective complaint was because, although "[c]laimant does have some arthritis and possible disc disease ...,"

> these are no motor, sensory, or reflex abnormalities. He is not afflicted with muscle spasm or tenderness. There is no muscular atrophy.

(Record, p. 141).

■ In short, the Administrative Law Judge discounted plaintiff's subjective com-

plaints of disabling pain not because of any substantial evidence that plaintiff was not experiencing pain, but rather because he found insufficient evidence of the physical cause of plaintiff's pain. The Administrative Law Judge's application of this objective evidence standard to plaintiff's complaints was erroneous given the rule that "objective" medical evidence need not accompany evidence of subjective pain to establish a finding of disability. *Aubeuf v. Schweiker, supra; see also Hankerson v. Harris,* 636 F.2d 893, 895 (2d Cir.1980).

██ A second error reflected in the Administrative Law Judge's determination is his failure to explain, let alone with adequate reasons, why he found plaintiff not credible (Administrative Law Judge's Finding No. 3, Record, p. 15). When an administrative law judge discredits an applicants testimony, the Administrative Law Judge must articulate the reasons for doing so. *Ber v. Celebrezze,* 332 F.2d 293, 299 (2d Cir.1964); *Dunbar v. Califano,* 454 F.Supp. 1261, 1267 (W.D.N.Y.1978). Without elaboration, the Administrative Law Judge rejected plaintiff's complaints about his pain, stating peremptorily that, "His allegations to the contrary lack credibility" (Finding No. 3, Record, p. 15).

██ Nevertheless, there are three possible underlying reasons in the Administrative Law Judge's evaluation of the evidence as to why he did not find Meyer believable; none of which are tenable under the Social Security Act. First, the Administrative Law Judge apparently relied on the fact that there was no discernible physiological source of Meyer's disabling pain. For the same reason the absence of objective medical evidence cannot be a basis to reject plaintiff's subjective complaints outright, it is not a proper basis to find a claimant not credible. *Aubeuf v. Schweiker, supra; Rivera v. Secretary of Health, Education, and Welfare,* 513 F.Supp. 194, 199 (S.D.N.Y. 1981).

██ Second, the Administrative Law Judge observed that, "Claimant is not taking any prescribed pain medication" (Rec-

ord, p. 14). This conclusion is neither factually sound nor legally relevant. In the first place, Meyer's records show he is taking several medications, including aspirin (Record, p. 100). Additionally, Dr. Early observed, Meyer is also taking significant dosages of diazepam, which is prescribed not only as an anxiety reduction agent but also as a muscle relaxant (*See* Record, p. 100). In any event, because "it is not within the Administrative Law Judge's competence to prescribe treatment," the significance of his observation concerning plaintiff's medication is doubtful. *See Aubeuf v. Schweiker, supra* at 113 n. 9.

██ The Administrative Law Judge's final reason for disbelieving plaintiff's testimony was his conclusion that Meyer was neither motivated to work nor interested in rehabilitation (*see* Record, p. 14). This finding is simply unsubstantiated by any plausible evidence in the record. The solitary reference to Meyer's motivation for work is Dr. Early's categorical, unexplained conclusion that he did "not believe him to be well enough motivated to seek rehabilitation or gainful employment" (Record, p. 84). The only other allusion to plaintiff's rehabilitation came near the end of the hearing when plaintiff explained that the Compensation Office had suggested a vocational rehabilitation program for plaintiff. Yet, when Mrs. Meyer explained the full extent of plaintiff's condition to the woman in charge of the Compensation Office, the woman told plaintiff not to come in (Record, pp. 35–36). Nothing in the record indicates plaintiff's failure to participate in a rehabilitation program had anything to do with his personal motivation. For this reason as well as the others, it was therefore erroneous to conclude plaintiff's testimony about his pain was not credible.

██ The Administrative Law Judge's disability determination reflects one further significant error. It is apparent from his decision that the Administrative Law Judge ignored the principle that "the expert opinions of a treating physician as to the existence of a disability are binding on the factfinder unless contradicted by substantial

evidence to the contrary." *Aubeuf v. Schweiker, supra* at 112; *McLaughlin v. Secretary of Health, Education, and Welfare,* 612 F.2d 701, 705 (2d Cir.1980). The record plainly reveals that Dr. Arthur Prestine has been plaintiff's treating physician since 1973 (Record, p. 51), and has been treating him regularly for his back pain since October 1979 (Record, p. 51, 59). There is no medical statement in the record from Dr. Prestine. In the absence of Dr. Prestine's statement, the letter from Dr. Marano to Dr. Prestine should be treated as the opinion of a treating physician inasmuch as it was written at the direct request of the treating physician. Dr. Marano observed and noted the effects of plaintiff's pain, and noted his inability to walk for any length of time, inability to bend over, and inability to lie on his back. He concluded that plaintiff was disabled due to underlying arthritis. At the hearing, Meyer attested to his severe pain and its debilitating effects. His wife corroborated his description, noting that before his accident, her husband had been an active person (Record, p. 32). Even though Dr. Hanavan found no orthopedic or neurological disability, he acknowledged plaintiff's subjective complaints. Dr. Early's opinion was the only evidence not fully supporting plaintiff's claims. Still, considering that even Dr. Early found Meyer partially disabled, it cannot be said that his opinion comprised substantial evidence to the contrary of Dr. Marano's conclusion, particularly in light of all of the evidence.

### B. *Residual Functional Capacity and Alternate Gainful Employment*

Based on his findings concerning the disability effects of plaintiff's impairments, the Administrative Law Judge determined that plaintiff was capable of performing sedentary work (Finding No. 6, Record, p. 15). Since his conclusion was based on the application of erroneous legal standards, the Administrative Law Judge must also reconsider whether to alter his previous finding and adopt instead the vocational expert's view that given his diagnoses and symptoms, Meyer cannot work

(Record, p. 34). This reconsideration can be made, however, only after the Administrative Law Judge has reevaluated the issue of plaintiff's pain. *See Aubeuf v. Schweiker, supra* at 114.

The Administrative Law Judge must also redetermine the existence and nature of jobs plaintiff would be able to perform if he is found to have the residual functional capacity to perform some type of work. At the hearing, the Administrative Law Judge called upon the vocational expert to describe the jobs plaintiff would be able to do "if ... his impairments were not severe" (Record, p. 34). In response, the expert listed several "sedentary, sitting non-stressful" jobs existing in the national economy, such as a microfilm machine operator, copy camera operator, bench assembly person, and envelope folder (Record, p. 35).

The existence of these jobs and plaintiff's capacity to perform them are implicit in the Administrative Law Judge's finding that Meyer is not disabled under the Social Security Act (Finding No. 10, Record, p. 16). (*See also,* Record, pp. 13–14). As it stands now, however, the vocational expert's testimony is not relevant. Her description of the available jobs to which plaintiff could transfer his skills is "only useful if it addresses whether the particular claimant, with his limitations and capabilities, can realistically perform a particular job." *Aubeuf v. Schweiker, supra* at 114; *see Parker v. Harris, supra* at 231. Inasmuch as the vocational expert initially stated that someone with Meyer's impairments could not perform any alternate work, her testimony regarding alternate available jobs impliedly addresses only the hypothetical person described by the Administrative Law Judge who possesses limitations and capabilities different from plaintiff's; it presumably does not respond to plaintiff's particular characteristics.

### C. *Hearing Procedures*

Regardless of the Administrative Law Judge's application of erroneous legal standards, a remand would still be in order by

virtue of the inadequate manner in which he conducted the hearing and marshaled the evidence.

Plaintiff, appearing pro se, had only a tenth grade education. It is evident even from the short transcript that Meyer had difficulty comprehending some of the questions, if not the proceeding itself (*see* Record, p. 32). For example, in response to the Administrative Law Judge's question, "Do you have hypertension?", Meyer answered, "Yes. Very easily. I mean if I see something, I'd have to walk away from it" (Record, p. 31). Significantly, the Administrative Law Judge did not attempt to follow-up or explain his question although it was obvious Meyer did not understand it.

▇▇ Under normal circumstances, an administrative law judge is entitled to rely on the evidence furnished by the claimant and attached to the record. However, when a claimant is proceeding without the assistance of an attorney and is "plainly unequal to the task of developing his own record," the hearing examiner assumes an obligation to develop as complete a record of all the relevant facts as thoroughly as possible. *Fernandez v. Schweiker,* 650 F.2d 5, 8 (2d Cir. 1981); *Hankerson v. Harris,* 636 F.2d 893, 895 (2d Cir.1980); *Gold v. Secretary of Health, Education, and Welfare,* 463 F.2d 38, 43–44 (2d Cir.1972). In the context of Meyer's inability to understand the proceedings clearly, as illustrated by the hypertension example, the record reveals that the Administrative Law Judge disregarded his obligation in several respects.

▇▇ The twenty-three minute hearing can be characterized as nothing more than a "rush job." The questions the Administrative Law Judge asked Mr. Meyer concerning his disability cover only four pages of the fourteen-page hearing transcript (*see* Record, pp. 28–31). The Administrative Law Judge interrupted plaintiff several times, apparently without listening to the answers. He asked Meyer only two direct questions about his back pain ("[I]s it constant pain . . .?"; "Is it severe at times?" (Record, p. 29)); and only one question about his knee pain ("[I]s that constant pain

or is it something that comes and goes?" (Record, p. 29)). He failed to ask Meyer many obvious specific questions about the effects of his impairments, such as how long he could sit, how severe the pain is when he sits, did he sit at home, did he walk at home, did he lie down at home, what therapy and what medications he took for his pain. *See Hankerson v. Harris, supra* at 895–96; *see also Dousewicz v. Harris,* 646 F.2d 771, 774 (2d Cir.1981). The few times the Administrative Law Judge did ask relevant questions, he omitted to follow-up the answers with amplifying questions. Instead, he frequently shifted direction without exploring plaintiff's answers. For instance, when Meyer responded to the Administrative Law Judge's question concerning his hospital visits by stating he was still an outpatient, the Administrative Law Judge proceeded to ask Meyer if he had a pending Workmen's Compensation claim, without bothering to ask plaintiff why he was an outpatient (Record, p. 30).

The Administrative Law Judge's failure to develop a complete record is particularly striking with regard to Meyer's sporadic allusions to his service-related anxiety reaction disorder. In his decision, the Administrative Law Judge noted plaintiff's occasional references to his serious nervous condition, but concluded nevertheless that claimant did not have a "psychiatric impairment," in large part because the Veterans Administration records before him were "largely silent" on the subject (Record, p. 5).

The paucity of evidence about plaintiff's nervous disorders must be attributed in large measure to the Administrative Law Judge's own inertia and failure to obtain the evidence. At different points in the abrupt hearing plaintiff alluded to his nervous condition (Record, pp. 29, 31, 36), the fact he was being treated at the Veterans Administration Hospital (Record, p. 30), and the fact that he took medicine for his condition (Record, pp. 30–31), *see also* p. 69. At no time during the hearing did the Administrative Law Judge ask any follow-up questions to these references to find out

more about plaintiff's nervous condition, what treatment and/or medication he was receiving for his condition, or who was treating him for his nervous disorder. Similarly, the Administrative Law Judge did not ask Meyer why he was receiving a fifty percent Veterans Administration disability pension when Meyer told him about it (Record, p. 28). When coupled with the list of drugs plaintiff was taking which were prescribed by a "Dr. Kane," the scattered reference to Meyer's nervous disorder should have alerted the Administrative Law Judge to the likelihood that much of the medical evidence pertaining to Meyer's nervous condition was missing from the record.

Under the circumstances, it was incumbent on the Administrative Law Judge to call witnesses such as Dr. Kane to find out more about plaintiff's nervous condition, or at the very least, to advise plaintiff he had the right to subpoena witnesses on his own behalf. *See Fernandez v. Schweiker, supra* at 8.

For the same reason, it was also error for the Administrative Law Judge not to inform plaintiff about his right to have oral or written evidence produced from any of his other treating physicians, and in particular, Dr. Prestine. Since plaintiff was apparently being treated by Dr. Prestine with some degree of regularity, the lack of his medical opinion or any of his medical records is especially noticeable. Nonetheless, there is no indication that the Administrative Law Judge made any attempt to secure these records himself, or to help Meyer obtain these records on his own. *Fernandez v. Schweiker, id.*

CONCLUSION

The sum of these errors, if not any one of them alone, mandates a careful reconsideration of this case. Accordingly, this action is remanded to the Secretary for further proceedings consistent with this opinion including, but not limited to, a reevaluation of the disability effects of plaintiff's pain and the development of a thorough record concerning all of plaintiff's impairments, including his nervous disorder. In this case the court

suggests that the hearing be held before a different Administrative Law Judge.

So ordered.