**Mattie SMITH**

v.

**Joseph A. CALIFANO, Jr., Secretary, Department of Health, Education and Welfare.**

Civ. A. No. B–77–1948.

United States District Court, D. Maryland.

July 31, 1978.

Michael S. Elder, Legal Services Clinic, Baltimore, Md., for plaintiff.

Russell T. Baker, Jr., U. S. Atty. for the District of Maryland, and Gale E. Rasin, Asst. U. S. Atty., Randolph W. Gaines, Chief of Litigation, and Joseph S. Friedman, Social Security Division, Department of Health, Education and Welfare, Baltimore, Md., for defendant.

## MEMORANDUM AND ORDER

BLAIR, District Judge.

On November 18, 1977, Mattie Smith, by counsel, filed a complaint pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) seeking review of a final decision of the Secretary of Health, Education and Welfare denying her certain claimed disability benefits. Plaintiff, a 53 year old (Tr. 249)[1] resident of Baltimore, started applying for various disability benefits in June, 1971 (Tr. 210–213). Following a hearing held on April 6, 1976 (Tr. 58–110), an administrative law judge (ALJ) rendered three separate written decisions on June 3, 1976, denying plaintiff's claims for supplemental security income disability benefits (Tr. 41–45), disabled widow's benefits (Tr. 46–50), and disability insurance benefits (Tr. 51–52). The Appeals Council, by order entered November 18, 1976 (Tr. 29–31) remanded the matter to another ALJ for a new plenary hearing, which was held on February 24, 1977 (Tr. 111–209). At both hearings, plaintiff was represented by counsel; at both hearings, plaintiff and at least one corroborating witness testified. At the second hearing, a vocational expert appeared and testified at length (Tr. 174–205). On May 27, 1977, the ALJ who heard the remanded case rendered a written decision (Tr. 14–23) denying all claimed benefits. By letters dated September 15 and December 28, 1977 (Tr. 4–7), the Appeals Council affirmed the ALJ's decision. The complaint herein followed. The

---

1. References are to the transcript of administrative proceedings filed with defendant's answer.

parties have filed cross-motions for summary judgment, and the plaintiff has, alternatively, moved for a remand. Oral argument on the motions is deemed unnecessary. Local Rule 6.

Plaintiff was born in North Carolina in 1924 (Tr. 249). She has an eighth grade education, has been a widow since she accidently shot her husband in 1963, and lives alone in reduced circumstances (Tr. 118–120, 170). She reads only with difficulty (Tr. 114). She worked for 27 years in a clothing factory attaching fastenings to men's trousers (Tr. 121). She then drove a lunchwagon for eighteen months, but was discharged after several collisions (Tr. 123–124). After that, plaintiff worked for another eighteen months as a nurse's aide, but she was fired after an absence of two or three days allegedly due to illness (Tr. 125–126). She worked briefly in a clothing factory in 1976, but was discharged in less than a month on account of inadequate eyesight (Tr. 320). Mrs. Smith testified to a constellation of somatic complaints, including chest pain, varicose veins, watery eyes, nervousness and back pain (Tr. 116–166 *passim*). In addition, medical reports indicate that she has complained of, or been treated for, other conditions, including ethanol abuse and hypertension (Tr. 259–291, 302–312 *passim*). Plaintiff's quotidian activities are limited primarily to idle pursuits on the first floor of her house; she does not use the second floor bathroom either for bathing or excretory functions, and she employs a first-floor bucket for the latter (Tr. 99, 159–160). Plaintiff's son offered brief testimony as to his mother's physical and mental state (Tr. 168–173); he also submitted a photograph he had taken showing his mother's varicose veins (Tr. 319). The vocational expert testified that, considering the physical conditions and limitations set forth in the consultative report of Dr. Plott (Tr. 294–301), and considering plaintiff's vocational background, there were a number of locally available jobs that she had the residual ability to perform (Tr. 174–181). The vocational expert adhered to this opinion, which took into account all the evidence of record and also all the evidence that was presented at the hearing (Tr. 181), despite extensive cross examination, although he did, of course, recognize certain limitations upon residual employability that would arise if all of plaintiff's testimony were believed (Tr. 201–205). In his detailed and cogent decision, the ALJ specifically found plaintiff's subjective pain evidence incredible (Tr. 21). The ALJ concluded, after a review of all the evidence, that plaintiff was, despite her multiple complaints, capable of engaging in substantial gainful activity.

In order to be eligible generally for disability benefits, a claimant must establish that he or she is under a disability within the meaning of the Social Security Act. "Disability" is defined in 42 U.S.C. § 423(d)(1)(A) as follows: [2]

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . .

Section 423(d)(2)(A) provides that:

> an individual . . . shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . .

The burden is on the claimant to furnish medical and other evidence of the existence of a disability. 42 U.S.C. § 423(d)(5) (1976). The sole issue before this court is whether there is "substantial evidence" to support the Secretary's decision. 42 U.S.C. § 405(g) (1976). The fact that the record taken as a whole might support a different conclusion

2. The same standard is applicable to Supplemental Security Income benefits. 42 U.S.C. § 1382c(a)(3)(A) (1976).

is immaterial. The language of Section 405(g) precludes a *de novo* judicial proceeding and requires that the court uphold the Secretary's decision even should the court disagree with the decision so long as it is supported by substantial evidence. *Blalock v. Richardson,* 483 F.2d 773, 775 (4th Cir. 1972). The phrase "substantial evidence" has been defined by the Fourth Circuit Court of Appeals to be:

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. *If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'*

*Blalock v. Richardson, supra* at 776 (emphasis added).

There are four elements of proof to be weighed in determining whether there is substantial evidence to support the Secretary's decision. These are:

1. the objective medical facts;

2. the diagnosis and expert opinions of treating and examining physicians on subsidiary questions of fact;

3. subjective evidence of pain testified to by the claimant and corroborated by family and neighbors;

4. the claimant's educational background, work history, and present age.

*Blalock v. Richardson, supra* at 776. Thus, it is for the Secretary in the first instance to weigh the evidence and resolve conflicts therein, and the purpose of review in this Court is not to substitute the view of this court for that of the Secretary so long as there is substantial evidence to support the Secretary's conclusion.

Plaintiff's main attack in the instant case is directed at the testimony of the vocational expert. Plaintiff contends that his expert opinion is not substantial evidence of residual employability because it was premised "on hypotheticals which do not fairly cover all the evidence." (Plaintiff's Summary Judgment Motion at 19). Although it is true that the hypothetical directly asked the expert by the ALJ was grounded upon acceptance of Dr. Plott's consultative report (Tr. 177), it is also true that the ALJ specifically directed the expert's attention to all of the evidence of record and to the hearing testimony, and the expert adhered to his conclusion as to residual capability (Tr. 181–183). Also, the expert testified on cross examination that, even taking them as true, most of plaintiff's complaints would not preclude her from engaging in substantial gainful activity. Thus, even assuming the truth of plaintiff's testimony as to the functional restrictions imposed by, e. g., watery eyes and inability to sit for long periods, and, most of all, pain and discomfort, there were still jobs she could perform (Tr. 201–205). In light of the ALJ's assessment of plaintiff's credibility, it is clear that the ALJ (who also has the leeway, like any trier of fact, to determine the weight to be given an expert's testimony) was not in error in relying upon the vocational expert's evaluation of plaintiff's residual capacity. The hypothetical question posed by the ALJ (which was more than adequately countered with hypotheticals posed by plaintiff's counsel) was neither unfair nor misleading, nor did it inexorably suggest its own answer. Thus, neither remand nor reversal is compelled in this case by application of the rule in *Chester v. Mathews,* 403 F.Supp. 110, 118 (D.Md. 1975).

For her other allegations of error, the plaintiff attacks the ALJ's conclusion, at Tr. 20, that plaintiff's need to elevate her legs three or four times daily (Tr. 150) would not necessarily preclude her from engaging in substantial gainful activity. Although an ALJ is not free to take "administrative notice" of medical facts, *Tyler v. Weinberger,* 409 F.Supp. 776, 788 (E.D. Va.1976), nothing precludes him from applying common sense to the evidence. *See McLamore v. Weinberger,* 538 F.2d 572 (4th Cir. 1976), in which the Fourth Circuit condoned application of common-sense reasoning by an ALJ as to residual vocational ability. In the view of this court, the ALJ here did not err in concluding that, even accepting her need to elevate her legs, plaintiff could still work.

148

Finally, plaintiff attacks the ALJ's resolution of the issue of her credibility, arguing that the ALJ's failure to credit her subjective evidence of pain was not based on substantial evidence. The argument is plainly specious. Perhaps the oldest function of the trier of fact in the common law system is the determination of the credibility of witnesses; this is a function that ALJs have, indeed, inherited. *Teal v. Mathews,* 425 F.Supp. 474, 479 (D.Md.1976). The demeanor of the witness is, of course, a permissible (if not the major) consideration in determining credibility, and it is clear from the first paragraph at Tr. 21 that the ALJ quite properly based his assessment of plaintiff's credibility largely upon his observation of her demeanor.

In short, the ALJ, after a full and fair hearing, concluded that, despite her many miseries, plaintiff was not precluded from engaging in substantial gainful activity. That conclusion is supported by substantial evidence, and will not be disturbed on this court's review. *Richardson v. Perales,* 402 U.S. 389, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971). Thus, judgment will be entered separately denying plaintiff's alternative motions for remand and summary judgment, granting defendant's motion for summary judgment, and ordering the entry of summary judgment in favor of the defendant.