Jose DELGADO, Plaintiff,

v.

SECRETARY OF HEALTH AND HUMAN SERVICES, Defendant.

No. 83 Civ. 167 (WCC).

United States District Court,
S.D. New York.

Oct. 31, 1983.

Jose Delgado, plaintiff, pro se.

Rudolph W. Giuliani, U.S. Atty., S.D. N.Y., New York City, for defendant; Richard A. Simpson, Asst. U.S. Atty., Annette H. Blum, Regional Atty., Region II, Rosemarie Matera, Asst. Regional Atty., Dept. of Health and Human Services, New York City, of counsel.

## OPINION AND ORDER

CONNER, District Judge.

Plaintiff Jose Delgado ("Delgado") initiated this action under Section 205(g) of the Social Security Act ("the Act"), 42 U.S.C. §§ 405(g) and 1383(c)(3), for review of a final determination by the Secretary of Health and Human Services ("Secretary") denying plaintiff's application for Supplemental Security Income ("SSI"). The Secretary has moved for judgment on the pleadings pursuant to Rule 12(c), F.R. Civ.P. I have reviewed the record and

conclude that the Secretary's determination is supported by substantial evidence. Therefore, the motion will be granted.

*Background*

The record indicates that Delgado sustained a gunshot wound to his right leg during a mugging incident on September 23, 1980, and was admitted to Lincoln Hospital where doctors were forced to amputate his leg above the knee. He was discharged from the hospital on December 17, 1980, and five days later he filed an application for SSI, claiming he was disabled as a result of the amputation.

The Social Security Administration denied Delgado's application on March 10, 1981, indicating that because his condition was not expected to be severe for a continuous period of at least twelve months, he failed to meet eligibility requirements. Delgado sought reconsideration of this determination, and on July 23, 1981 his application was again denied. He then requested a hearing, which was held on October 6, 1981 before Administrative Law Judge Robert J. Lazarus ("the ALJ"). The ALJ reviewed the case *de novo* and issued a decision dated February 25, 1982, in which he found that Delgado was not "disabled" within the meaning of the Act. The Appeals Council refused to review the ALJ's decision, making it the final determination of the Secretary.

At the time of the hearing Delgado was 36 years old. (Tr. at 22).[1] He testified that he was born in Puerto Rico and completed the fourth grade there, but could not read or write. (Tr. at 22, 25–26). He was employed as a construction worker before moving from Puerto Rico to New York in 1971, but in the period after his arrival in New York, he did not work. (Tr. at 23–24). Delgado attributed his lack of employment to drug involvement, dizzy spells and a nervous condition. (Tr. at 27). Although he continued to complain of the latter two conditions at the time of the hearing, he said that he had not used drugs for approximately two years, and had abstained from

1. All citations refer to the pages as numbered    for the complete record on appeal.

alcohol for two or three weeks. (Tr. at 22). He attended a detoxification clinic at Lincoln Hospital three times a week. (Tr. at 31).

Delgado testified that in addition to his visits to the detoxification clinic, he attended physical therapy sessions to learn how to use his prosthetic leg. This therapy included walking, lifting, and doing various other exercises. (Tr. at 29). He explained to the ALJ that he had been fitted with the prosthesis approximately two months earlier and tried to wear it every day, but that it caused him pain and he was often forced to remove it. (Tr. at 30). Delgado indicated that he had difficulty bending the leg, and that he had to get accustomed to it. (Tr. at 33). He also experienced pain when he was not wearing the prosthesis, and as a result, he was often unable to sleep through the night. (Tr. at 32–33). He was not taking any medication for the pain. (Tr. at 31).

Delgado stated that he lived alone in a three-room apartment, but that a woman friend did his cooking, shopping, laundry and cleaning. (Tr. at 30). Public assistance was his only source of income. (Tr. at 24). His daily activities included watching television and sitting outside his apartment, talking to people who passed by. He generally went to bed at seven or eight o'clock in the evening. (Tr. at 32–33). Delgado explained that he used crutches to walk and was able to travel by bus; he was unable to use the subway, however, because he could not negotiate the stairs.

Documentary evidence in the form of Delgado's disability report (Tr. at 49–56) and medical records (Tr. 63–96) was also submitted for the ALJ's consideration. Notes dated December 19, 1980 indicate that Delgado had begun rehabilitative therapy, and his stump appeared to be "nontender to deep pressure." (Tr. at 79). On January 2, 1981, the physical therapist noted that plaintiff felt "a bit stronger" in his lower right extremity, and that he was experiencing no acute distress. The scar was healing and the stump continued to appear non-tender to deep pressure. Del-

gado was provided with "gait instruction" and a home exercise program. (Tr. at 83). On February 3, 1981, Delgado was measured for an above-the-knee prosthesis, and on March 3, 1981, he returned for a fitting of the device. The goal stated by his physician on that date was to "improve ambulation status," and the treatment plan notation refers to ambulation training and use of "one crutch or cane if feasible." (Tr. at 88).

According to the medical records, Delgado had some difficulty with transportation to the hospital and therefore failed to attend therapy sessions regularly. He did appear on April 22, 1981, however, and agreed to continue ambulation training. He returned on May 20, 1981, at which time the doctor noted that because his attendance at therapy sessions continued to be sporadic, he was not yet fully trained in use of the prosthetic leg. Plaintiff indicated at that time that he wished to continue the training. His stump was "in good condition" and his ambulation with crutches was "very functional." (Tr. at 94).

Delgado's last visit to the clinic prior to the hearing was on October 3, 1981. However, the record does not contain any indication of the progress he had made at that juncture.

*Discussion*

A claimant is entitled to disability benefits under the Social Security program if he is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected ... to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1). The burden of proving disability is on the claimant. *See, e.g., Parker v. Harris,* 626 F.2d 225 (2d Cir.1980). Once the claimant has established a *prima facie* case by showing that his impairment prevents his return to his prior employment, the burden shifts to the Secretary who must show that there exists alternative substantial gainful work in the economy which the claimant could perform, considering not only his physical capacity but also his age, education, experience and

training. *Parker v. Harris, supra*, 626 F.2d at 231.

■ The regulations set forth a five-step sequence to be utilized in evaluating a disability benefit application. First, the trier of fact should consider the claimant's current work activity. If the claimant is currently engaged in substantial gainful activity, he will not be found to be disabled. Second, the trier of fact should determine whether the claimant has a "severe impairment" which has significantly limited or will significantly limit his capacity to perform basic work activities for a period of twelve months. Basic work activities are defined as including physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, and handling. If there is no "severe impairment," no further consideration is necessary. If such an impairment does exist, however, the trier of fact should then decide whether the claimant has an impairment as described in Appendix I of the regulations. If the condition qualifies under these guidelines, the individual must be determined to be disabled without consideration of vocational factors. The fourth inquiry is whether the claimant's impairments prevent him from performing his past work. Finally, if the claimant cannot perform his past work, the trier of fact should consider whether the claimant's remaining physical and mental abilities are consistent with the demands of other jobs and whether he has the vocational capabilities to make the adjustment to such new type of employment. 20 C.F.R. § 404.1503; *see Berry v. Schweiker*, 675 F.2d 464 (2d Cir.1982). As noted above, the claimant bears the burden of proof as to the first four steps while the Secretary must prove the final one.

■ In reaching a conclusion on these issues, the case law indicates that the trier of fact should consider (1) objective medical facts, diagnoses, or medical opinions, (2) subjective testimony by the claimant as to pain or disability, and (3) background data such as the claimant's age, education, and previous work experience. *Parker, supra;*

*Bastien v. Califano*, 572 F.2d 908 (2d Cir. 1978). Where, as here, the claimed disability results in part from severe pain, the application for benefits should be evaluated under "the standard that a medical impairment which results in severe disabling pain may give rise to a grant of disability even if 'objective' clinical findings do not provide proof of an affliction ordinarily causing such pain." *Aubeuf v. Schweiker*, 649 F.2d 107, 114 (2d Cir.1981), quoting *Marcus v. Califano*, 615 F.2d 23, 28 (2d Cir.1979). However, the Secretary is not obliged to accept as true a claimant's self-serving, subjective statements pertaining to his claim. *See Aubeuf v. Schweiker, supra*, 649 F.2d at 114; *Marcus v. Califano, supra*, 615 F.2d at 27. Subjective symptoms must be evaluated with due consideration of credibility, motivation and medical evidence of impairment.

The standard for judicial review of disability determinations by the Secretary is established by § 205(g) of the Act. That section provides that the Secretary's factual findings shall be conclusive if supported by substantial evidence, which has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971), quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 216, 83 L.Ed. 126 (1938).

■ The substantial evidence test applies not only to findings of basic evidentiary facts, but also to inferences and conclusions drawn from such facts. *Rodriguez v. Califano*, 431 F.Supp. 421, 423 (S.D.N.Y. 1977); *Beane v. Richardson*, 457 F.2d 758, 759 (9th Cir.), *cert. denied*, 409 U.S. 859, 93 S.Ct. 144, 34 L.Ed.2d 105 (1972). In short, the reviewing court is not to decide the case *de novo*, and the Secretary's determination will be conclusive even in instances where the court's independent analysis of the evidence may differ from that of the Secretary. *Reading v. Mathews*, 542 F.2d 993, 997 (7th Cir.1976). A reviewing court is not required to accept the Secretary's

determination, however, if the Secretary failed to apply proper legal principles or failed explicitly to consider evidence critical to a just determination of the claimant's application. *Parker, supra,* 626 F.2d at 231.

■ After considering plaintiff's testimony and the medical documentation presented in this case, the ALJ concluded that plaintiff was not suffering from an impairment or combination of impairments which precluded or would preclude substantial gainful activity for a continuous period of twelve months. The ALJ enumerated several factors significant to his determination, including plaintiff's ongoing training in the use of his prosthesis, his apparent ability to travel by public transportation, and his appearance and carriage at the hearing. I have reviewed the record and conclude that the ALJ applied proper legal principles, and reached a decision amply supported by the record.

Plaintiff was undergoing physical therapy and planned to continue. He testified himself that he had to "get used to [the prosthetic] leg." He stated that he could travel by bus, and he was apparently quite proficient with his crutches. The ALJ was in the best position to observe plaintiff's physical appearance and demeanor, and for that reason, his judgment is properly given great deference. *Deyo v. Weinberger,* 406 F.Supp. 968, 974 (S.D.N.Y.1975).

The ALJ considered whether plaintiff's history of drug and alcohol use had an adverse impact on his abilities, and reasonably rejected such a conclusion on grounds that plaintiff had been drug-free for two years and had been responding well to treatment at the detoxification clinic. Due consideration was also given to plaintiff's complaints of dizzy spells and a nervous condition. The ALJ determined that there was "no evidence of any major psychopathology, organicity, psychosis, or neurosis, nor [was Delgado] under any medication, medical or psychiatric care for these conditions." (Tr. at 8). These conclusions are borne out by the medical records.

Lastly, the ALJ considered plaintiff's complaints of severe pain but rejected them as a basis for finding plaintiff "disabled" within the meaning of the Act because there was no objective medical evidence to support them. This Court has scrutinized the thirty pages of medical records in evidence and although small portions are illegible, the Court can state with complete confidence that the complaints of frequent and severe pain voiced by plaintiff at the hearing were not conveyed to his doctors during his many visits for treatment and rehabilitation. Under the standards set forth above, the ALJ was entirely justified in rejecting plaintiff's belated lament of severe and disabling pain as a basis for awarding SSI benefits.

For the foregoing reasons, I have concluded that the Secretary's determination that plaintiff failed to meet his burden of proof is supported by substantial evidence. Judgment is therefore entered in favor of defendant.

SO ORDERED.